IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHANNA MADDOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:12-CV-0795-SLB |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Shanna Maddox, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits and Supplemental Security Income. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards

were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if it is supported by substantial evidence. Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

## II.  STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the present case, the ALJ determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff had the residual functional capacity ("RFC") to perform her past relevant work, and accordingly found her not disabled.

3

### III. FACTUAL BACKGROUND

The plaintiff alleges disability due to a single mental impairment of depression. Pl.'s Br. 5. The plaintiff filed a prior application for benefits that was denied on March 28, 2007. R. 172. The plaintiff filed her current application on August 8, 2008, alleging disability beginning July 18, 2007. R. 26.

Treatment notes relevant to the plaintiff's current application begin with a visit to the emergency room on August 8, 2008, where she complained of depressive symptoms and thoughts of harming herself. R. 289 "She did admit to taking three Tylenol PM and three Benadryl last night and did not anticipate awaking [sic] up." R. 289. The plaintiff's urine drug screen was positive for cannabinoids. R. 290. The plaintiff was pregnant at this time and had three children who had recently been taken from her by the Alabama Department of Human Resources ("DHR"). R. 290, 300. She was discharged and was to follow-up for psychiatric evaluation at the Western Mental Health Center. R. 292.

On September 3, 2008, the plaintiff was seen at the Western Mental Health Center for an intake evaluation. She reported symptoms of depression due to her children being in DHR custody and not being with the father of the children. R. 300. The plaintiff reported she was experiencing poor sleep, was irritable and did not like to be around others. R. 300. She was scheduled to see Dr. Glaser for psychiatric evaluation. R. 301.

On September 15, 2008, Dr. Glaser saw the plaintiff, who reported she had not smoked cannabis for two months. R. 298. On mental status examination the plaintiff was found to be a "sad, tearful young lady who has trouble appreciating her contributions to her troubles. She is a little sullen but is congruously responsive. She is not slowed or agitated, and she is clearly not psychotic." R. 298. The plaintiff's problems were listed as Mood Disorder and Substance Abuse. R. 298. Dr. Glaser diagnosed Major Depressive Disorder, recurrent, mild. R. 298. He assessed a current GAF score of 47.[1] R. 299. The plaintiff was readmitted to Dr. Glaser's care for medical management. R. 299.

On October 13, 2008, a treatment note from the Western Mental Health Center states the plaintiff reported feeling "less depressed," and that she had "not been affected by her 'issues' as she was before." R. 296. The treatment note states that the plaintiff "has brighter affect, is more verbal, and is clearly less dysphoric." R. 296. The assessment was: "Symptoms seem to be responding to medication." R. 296.

On December 5, 2008 the plaintiff was seen by Dr. Saxon for a Social Security Administration consultative psychological evaluation. The plaintiff reported "she

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

5

continu[ed] to have a great deal of difficulty sleeping and remain[ed] generally an apprehensive and stressed individual." R. 307. The plaintiff reported it had been eight or ten months since she had last used marijuana. R. 308. However, Dr. Saxon noted this conflicted with her report to Dr. Glaser on September 15, 2008. R. 308. Dr. Saxon found the plaintiff did not seem particularly anxious, "though her affect was by and large rather flat generally." R. 308. He found the plaintiff

> does appear to be somewhat depressed with rather slow psychomotor speed, cautious, deliberate and slow movement, some air of preoccupation though she does on occasion smile. She does maintain reasonably good eye contact and certainly seemed to be putting out good effort to be cooperative.

R. 309. Dr. Saxon concluded that the plaintiff's "ability to attend and concentrate seemed adequate." R. 309. Dr. Saxon diagnosed the plaintiff with "Chronic Depression, mild to moderate" and "Substance Abuse, which she claims is currently in remission." R. 310. Dr. Saxon assessed a GAF score of 50. R. 310. In his closing comments Dr. Saxon reported the plaintiff appeared "to be mildly to moderately depressed with a good deal of anhedonia [and] social withdrawal." R. 310. Dr. Saxon opined the plaintiff had "sufficient intellectual ability and judgment to manage financial benefits if they are awarded." R. 310.

On January 8, 2009, a treatment note from the Western Mental Health Center shows the plaintiff had missed prior appointments with Dr. Glaser. R. 335. Dr. Glaser noted the plaintiff had her baby at the end of November and continued to report

depression four days out of the week.  R. 335.  His objective evaluation states:  "She doesn't appear to be significantly depressed now, but her affect is restricted."  R. 335.  The diagnostic assessment was:  "Little clinical change since our last contact."  R. 335.  On February 5, 2009, the plaintiff failed to show for her scheduled appointment with Dr. Glaser.  R. 334.

On August 18, 2009, the plaintiff contacted Dr. Glaser's office, reporting she had been out of medications for three months and was symptomatic.  R. 333.  The note states the plaintiff had been seen last on January 8, 2009.  R. 333.  Her medications were refilled and she was scheduled to see Dr. Glaser on September 29, 2009.  R. 333.

On August 28, 2009, Dr. Glaser completed a supplemental questionnaire provided by plaintiff's attorney.  On that questionnaire Dr. Glaser indicated the plaintiff had marked limitations in all categories.  R. 338-39.  The questionnaire indicates that no psychological evaluation was obtained.  R. 339.  Dr. Glaser indicated the plaintiff would have minimal side effects from medications and that the levels of severity indicated would apply without consideration of substance abuse.  R. 339.  Under comments Dr. Glaser wrote: "Non[-]compliance with treatment is contributing to her current level of distress."  R. 339.

A note from the Western Mental Health Center on September 29, 2009, indicates the plaintiff failed to show for her appointment with Dr. Glaser.  R. 332.  The note states the plaintiff's medications had been refilled when requested in August.  R. 332.  On

December 7, 2009, the plaintiff was terminated as a patient by Dr. Glaser because of her failure to return for treatment. The note states the plaintiff had made no contact since August 17, 2009, had missed appointments with Dr. Glaser, and had not asked for medications since August 2009. R. 342.

The final treatment note was after the date of the ALJ's decision, and was submitted to the Appeals Council. It is a discharge instruction sheet from the Marshall Med Center North dated September 28, 2010. R. 345. Because the plaintiff does not challenge the decision of the Appeals Council to deny review, this court will not consider this evidence in determining whether the ALJ's decision is supported by substantial evidence. See Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1266 (11th Cir. 2007) ("[W]hen a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council.").

## IV. DISCUSSION

### A.

The plaintiff argues on appeal that the ALJ's RFC findings are not based on substantial evidence. The ALJ found the plaintiff had no exertional limitations, and she alleges none on appeal. However, he found the plaintiff was restricted due to her mental illness. The ALJ restricted the plaintiff as follows:

> [T]he claimant can understand, remember and carry out simple tasks but not detailed tasks. The claimant can find locations and follow simple

> directions.  The claimant can maintain attention to a simple task for two
> hours without special supervision but not for extended periods.  The
> claimant will need a flexible daily schedule and all customary rest periods
> in roomy workplaces with only a few familiar coworkers.  Contact with the
> public should be casual and criticism non-confrontational.  Changes in
> work settings should be infrequent and gradually introduced.

R. 32.  Based upon this RFC, and expert vocational testimony adduced at the plaintiff's hearing, the ALJ found the plaintiff was able to perform her past relevant work as a packager and as a personal attendant.  R. 33.

The ALJ's RFC finding tracks the functional capacity assessment of Dr. Estock, the State agency medical consultant.  R. 327.  An ALJ must consider the findings of a State agency medical or psychological consultant, who is considered an expert, and must explain the weight given to such findings in the same way as with other medical sources.  See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  In determining how much weight to give to each medical opinion, the ALJ must consider several factors including: (1) whether the doctor has examined the plaintiff; (2) whether the doctor has a treating relationship with the plaintiff; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5)  whether the doctor is a specialist.  C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ gave Dr. Estock's opinions "significant weight due to the consistency with the record as a whole, Dr. Estock's expertise in psychological disorders, and Dr. Estock's regulatorily-recognized status as a highly qualified expert in

9

Social Security disability evaluation." R. 33. Therefore, the ALJ properly considered Dr. Estock's opinions under the regulations.

The plaintiff argues that Dr. Estock's opinion was "superseded by further evidence including an opinion from a treating psychiatrist and treatment in a hospital setting." Pl.'s Br. 9. As discussed above, the hospital discharge instructions dated September 28, 2010, were submitted to the Appeals Council after the ALJ's decision, and may not be considered by this court. Therefore, the court will only consider whether Dr. Estock's opinions were superseded by subsequent treatment notes or Dr. Glaser's questionnaire indicating marked limitations.

Although Dr. Estock did not have all of the plaintiff's treatment records at the time he rendered his decision, he did consider the plaintiff's treatment records through her October 13, 2008, visit to Dr. Glaser. R. 323. Dr. Glaser's October 13, 2008 treatment note shows the plaintiff reported feeling "less depressed," and that she had "not been affected by her 'issues' as she was before." R. 296. The treatment note states that the plaintiff "has brighter affect, is more verbal, and is clearly less dysphoric." R. 296. The assessment was: "Symptoms seem to be responding to medication." R. 296. The plaintiff was seen by Dr. Glaser only once more. On January 8, 2009, Dr. Glaser noted the plaintiff had her baby at the end of November and continued to report depression four days out of the week. R. 335. His objective evaluation states: "She doesn't appear to be significantly depressed now, but her affect is restricted." R. 335. The diagnostic

assessment was: "Little clinical change since our last contact." R. 335. The only other contact with Dr. Glaser's office for treatment was a request for medication refills on August 18, 2009. R. 333. The plaintiff contacted Dr. Glaser's office, reporting she had been out of medications for three months and was symptomatic. R. 333. The note states the plaintiff had been seen last on January 8, 2009. R. 333. Her medications were refilled and she was scheduled to see Dr. Glaser on September 29, 2009. R. 333. On December 7, 2009, the plaintiff was terminated as a patient by Dr. Glaser because of her failure to return for treatment. The note states the plaintiff had made no contact since August 17, 2009, had missed appointments with Dr. Glaser, and had not asked for medications since August 2009. R. 342.

Therefore, the only treatment note from Dr. Glaser that was unavailable to Dr. Estock showed the plaintiff did not appear to be significantly depressed, and her clinical assessment was little changed from the previous visit. The remaining treatment notes from Dr. Glaser show she requested refills of medications on one occasion, but failed to return for treatment. The treatment notes unavailable to Dr. Estock do not significantly weaken Dr. Estock's functional capacity assessment. Dr. Estock also had access to the consultative psychological evaluation of Dr. Saxon, who diagnosed the plaintiff with mild to moderate depression. R. 323, 310. Therefore, Dr. Estock's functional capacity assessment was not superseded by later treatment records.

**B.**

Plaintiff's argument concerning the questionnaire completed by Dr. Glaser's on August 28, 2009, is based on the ALJ having rejected it in part because Dr. Glaser indicated the plaintiff's noncompliance with treatment contributed to the severity of her impairment. Under the Commissioner's regulations, a treating physician's opinion will be given controlling weight if it is well supported and not inconsistent with other substantial evidence in the record.

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). In considering whether an ALJ has properly rejected a treating physician's opinion, this court is not without guidance. "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. Id. If a treating physician's opinion is rejected, the ALJ must clearly articulate the reasons for doing so. Id. ("The ALJ must clearly articulate the reasons for giving

less weight to the opinion of a treating physician, and the failure to do so is reversible error.")

The plaintiff argues the ALJ should have obtained clarification from Dr. Glaser. The regulation on recontacting medical sources in effect at the time of the ALJ's decision provided in pertinent part as follows:

> When the evidence we receive from your treating physician or psychologist or other medical source <u>is inadequate for us to determine whether you are disabled</u>, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e)(2010)(emphasis added). Under the regulation, the duty to recontact a medical source only arises if the medical evidence of record "is inadequate "to allow the ALJ "to determine whether [a claimant is] disabled." Id. Although the ALJ noted Dr. Glaser attributed the plaintiff's limitations to noncompliance with treatment, he also gave other reasons for giving Dr. Glaser's questionnaire little weight:

> While his report (and the claimant's testimony) indicates that the claimant's impairments were remediable with treatment, the assessment of marked limitations is given little weight as being unsupported by Dr. Glaser's contemporaneously reported treatment notes and being inconsistent with the medical evidence of record and with the claimant's reported daily activities.

R. 33. Therefore, the evidence of record was sufficient for the ALJ to determine whether Dr. Glaser's questionnaire should be credited. The treatment notes from Dr. Glaser show that on the plaintiff's initial visit Dr. Glaser assessed the plaintiff's Major Depressive Disorder, as being mild in severity. R. 298. Subsequent treatment notes show the plaintiff's condition improved with medication therapy. Dr. Glaser's questionnaire is inconsistent with his own treatment records and is not bolstered by the other medical evidence. Substantial evidence independent of Dr. Glaser's notation that the plaintiff's noncompliance was contributing to her current level of distress supports the ALJ's decision to give Dr. Glaser's questionnaire little weight. Therefore, the ALJ was not required to recontact Dr. Glaser for clarification.

## V. CONCLUSION

The court concludes the ALJ's determination that the plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered contemporaneously herewith.

**DONE**, this 30th day of September, 2013.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE